UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ALLIED VAN LINES INC.,

                                 Plaintiff                      DECISION AND ORDER

-vs-

                                                               03-CV-6426 CJS

TRIPLE C TRANSPORTATION INC. d/b/a
ADVANCE MOVING & STORAGE, Inc., a
New York Corporation, JOHN CURRENT,
CHRISTOPHER J. KLEE, and
CRAIG BARAVALLE,

                                 Defendants
_____

## APPEARANCES

| | |
|---|---|
| For plaintiff: | Karen M. Berberich, Esq.<br>Dombroff & Gilmore, P.C.<br>40 Broad Street, Suite 2000<br>New York, New York 10004-2382 |
| For defendants Triple C Transportation, Christopher Klee, and Craig Baravalle: | Thomas W. Reed II<br>2 West Market Street, Suite C<br>P.O. Box 143<br>Corning, New York 14830 |
| For defendant John Current: | George J. Welch<br>Welch & Zink<br>19 East Market Street, Suite 201<br>Corning, New York 14830 |

## INTRODUCTION

     This is an action for, inter alia, trademark infringement and breach of contract, in

which plaintiff Allied Van Lines, Inc. ("Allied") alleges that defendants wrongfully

continued to use Allied's registered trade marks after Allied terminated the agency

1

agreement that had previously allowed defendants to use the marks. Now before the Court are plaintiff's motion for a permanent injunction, plaintiff's motion for summary judgment, and a cross-motion for summary judgment by defendants Triple C Transportation, Inc. ("Triple C"), Christopher Klee ("Klee"), and Craig Baravalle ("Baravalle"). For the reasons that follow, Baravalle's motion for summary judgment is granted, to the extent that he is dismissed from this action, defendants' applications are otherwise denied, and plaintiff's applications are otherwise granted.

## BACKGROUND

Unless otherwise noted, the following are the undisputed facts. Allied and its agents provided moving and transportation services. Triple C was owned by Klee and Baravalle, each of whom owned twenty-five percent of the company, and John Current ("Current") who owned the remaining 50 percent. Current was Triple C's President, Baravalle its Vice President, and Klee its Secretary. However, Current ran Triple C, while Baravalle and Klee had little or no involvement in the company's day-to-day operations.

Triple C contracted with Allied to act as one of Allied's agents. On or about August 2, 1995, Allied and Triple C entered into an "Agency Contract."[1] The stated term of the agreement was July 1, 1995 to December 31, 1998. In the contract, Allied was designated as "CARRIER," and Triple C was designated as "AGENT." The 20-page agreement included section 3.8 ("the liquidated damages provision"), which

---

[1] The contract states that it supersedes and replaces a prior agency agreement between the parties which became effective on February 9, 1988. *See*, August 2, 1995 Agency Agreement, § 3.20. However, according to Mr. Reed, counsel for Triple C, Klee, and Baravalle, the prior agency agreement was actually between Allied and a predecessor company, not Triple C.

stated:

> CARRIER grants AGENT, for the term of this contract and not thereafter, limited license to use CARRIER's corporate name and registered service marks (trademark) in connection with AGENT's own business name, in advertising CARRIER's service, subject to CARRIER's prior approval. . . . Upon termination of this contract AGENT will no longer used the said names, trade names, trademarks, service marks, slogans, color combinations, designs, logos, copyrights and patents, etc., in any manner or in any capacity whatsoever.  Upon AGENT's failure to fully comply with the provisions of this paragraph, AGENT shall pay CARRIER the sum of $75.00 per day for each day during which such failure continues, beginning with the 31st day following termination of this contract, the aforesaid sum being agreed upon by CARRIER and AGENT as the amount by which CARRIER has been damaged, it being impossible to ascertain or prove the actual damage sustained.

The trademarks to which the contract refers include the terms "Allied," "Allied Van Lines," and the "disappearing highway" design.  As for the slogans, color combinations, designs, and logos referred to, Allied's tractor trailer trucks are orange and prominently display Allied's "disappearing highway" mark, along with the words, "Allied The Careful Movers."

On July 1, 1995, Allied and Triple C signed a "Conversion Agreement."  The title of the agreement referred to the "conversion" of Triple C's equipment to publicly identify it as an agent of Allied, and provided for a grant of up to $65,000.00 from Allied to Triple C, "to assist [Triple C] in identifying itself as an Agent of Allied on, among other things, its vehicles, offices and stationery."

On July 24, 1995, both Klee and Current signed forms entitled "Guaranty of Payment" to Allied.  Each guaranty stated, in relevant part, that it was

> necessary and essential to the existence of continuation of an agency relationship between Allied and [Triple C] that Allied be furnished with additional security in the form of this Guaranty for the prompt payment of all monetary obligations due or to become due from the aforesaid

> company pursuant to the Agency Agreement and successor agency agreements and Allied's Rules and Regulations.

The guarantees further stated that they would

> continue until all the terms of the foregoing contract have been satisfactorily performed or otherwise discharged by Triple C Transportation Co., Inc. d/b/a Advance Moving & Storage; and the Guarantor shall not be released of its obligation hereunder so long as any claim of Allied against Triple C Transportation Co., Inc. d/b/a Advance Moving & Storage arising out of the foregoing contract is not settled or discharged in full.

Pl. Appendix to Stmt. of Facts, Exs. E-F.

On or about June 3, 1996, Allied and Triple C entered into another "Agency Contract" that was substantially similar to the previous agency agreement, except that it covered the term April 1, 1996 to April 30, 1999. This agency agreement was signed on behalf of Triple C by Current. Similar to the previous agreement, this contract contained a section dealing with Triple C's use of Allied's "names, trade names, trademarks, service marks, slogans, color combinations, designs, logos, copyrights and patents, etc." Section 3.8(C) of the agreement contained a liquidated damages provision that is essentially identical to the one contained in the 1995 Agency Contract, except that it increased the daily liquidated damage amount to $100.00 per day.[2]

In or about January 2002, Klee and Baravalle ousted Current as President of Triple C. Current subsequently had no involvement in the operation of Triple C, and he informed Allied of that fact.

---

[2] As with the 1995 Agency Contract, this contract also notes that an agency agreement has existed between the parties since February 9, 1988. *See*, June 3, 1996 Agency Contract, § 3.20.

On June 10, 2002, Allied informed Triple C in writing that it was terminating the Agency Contract, effective September 10, 2002.  On October 15, 2002, Allied wrote to Triple C, reminding it that, pursuant to § 3.8 of the Agency Contract, "your company had 30 days to discontinue use of the Allied name, trade names, trademarks, service marks, slogans, color combinations, designs, logos, copyrights and patents, etc. in any manner or in any capacity whatsoever.  That 30 days expired on October 10, 2002."  Allied requested that Triple C confirm in writing that it had complied with § 3.8.  Triple C did not provide such confirmation, and on December 4, 2002, Allied again wrote to Triple C, stating that, although Triple C had not confirmed that it had ceased using Allied's trademarks, logos, etc., Allied would assume that Triple C had complied with § 3.8. Allied reiterated, however, that if it learned that Triple C was still using Allied's marks, it would "pursue legal action against [Triple C] for the recovery of damages as outlined in Section 3.8 of the Agency Contract."

Although Allied terminated the agency relationship with Triple C, it continued to use Triple C's services on occasion to "service Allied customers." Klee Aff. ¶ 22.

Allied subsequently sent a private investigator to inspect Triple C's property at 83 Hammond Street, Big Flats, New York, on or about January 9, 2003.  The investigator, William F. Mitchell, Jr. ("Mitchell"), reported in an affidavit that there were "numerous trailers and semi-trucks containing the Allied marks and trade dress" on the premises. Photographs taken by Mitchell and attached to his affidavit depict numerous trailers, bearing Allied's orange color, the "disappearing highway" symbol, and the words "Allied The Careful Movers."  The photos also depict at least one orange trailer truck bearing the words "Operated By Allied Van Lines, Inc."

Mitchell inspected Triple C's premises again on January 28, 2004, and again on April 26, 2004. He states in an affidavit that, on both occasions, "there were numerous trailers and semi-trucks that still contained the Allied marks and trade dress." Mitchell's photographs taken on January 28, 2004, showed the presence of the same semi-trucks and trailers as before, however the name "Allied" had been painted over. The "disappearing highway" symbol was still clearly visible on the trailers, although that portion of the symbol consisting of a highway sign bearing the number "1" had been painted over. The words "The Careful Movers" were still visible on at least one of the trailers. Boxes bearing the Allied name and logo were visible on Triple C's loading dock. Mitchell's April 26, 2004, photographs show that someone had applied additional paint to the trucks and trailers, and that the Allied name and the "Careful Movers" phrase were no longer clearly visible. However, the overall orange color of the trucks and trailers, as well as a portion of the "disappearing highway" symbol, remained clearly visible on the trailers.

## PROCEDURAL HISTORY

Plaintiff commenced this action August 29, 2003. Plaintiff requested a temporary restraining order ("TRO") and an expedited hearing on December 29, 2003. In support of the TRO application, plaintiff's counsel stated, in relevant part, that

> Defendants continue to represent to the public that they are affiliated with Allied Van Lines, Inc., and continue to infringe upon the registered trademarks, trade dress and the name Allied in connection with the carriage of household goods. . . . The Defendants have continued to operate a business that directly competes with Allied . . . resulting in loss and damage to Allied.

Triple C, Klee, and Baravalle filed a response to the TRO application on January 20,

2004, denying that Triple C had infringed plaintiff's trademarks, and further stating that Triple C had "reorganized it business operations and was [operating] as an agent of Atlas World Group ("Atlas"), another international moving company similar to the Plaintiff." Nonetheless, they stated that they took "no position on the Plaintiff's request for a temporary restraining order and [left] the matter to the sound discretion of the Court." Current never responded to either motion.

Subsequently, at the parties' request, the Court agreed to hold the applications for a TRO and expedited hearing in abeyance while the parties attempted to settle their disputes. That attempt failed, and plaintiff filed a motion for summary judgment [#27] on January 3, 2005. Plaintiff alleges that, pursuant to § 3.8 of the parties' Agency Contract, it is entitled to liquidated damages in the amount of $81,200.00 as of December 31, 2004, with such damages continuing to accrue at the contract rate of $100.00 per day thereafter. In this regard, plaintiff contends that Triple C has "continued to utilize Allied's protected marks since the termination of the contract." Pl. Memo [#29] p. 3. As discussed above, plaintiff is also seeking a permanent injunction.

Current responded by arguing that, because he had no actual control over Triple C's operations at the time of the alleged breach of contract, he should not be held liable for any damages assessed against Triple C as a result of his personal guaranty: "I contend that [Allied's] termination of the franchise, knowing that I had no position of control with the franchise, constituted a knowing waiver by them of my guarantee of the performance of corporate obligations that would be required upon termination." Current Aff. ¶ 3. Current also contends that the $100/day liquidated damages amount is actually a penalty, and is "substantially out of proportion to the actual damages that

Plaintiff could or did suffer as a result of the alleged breach by Triple C." *Id*. at ¶ 4. Current further states that, "[w]ithout having some testimony from Allied regarding the *actual damages* that have accrued to them in this circumstance, there is no way to judge the reasonableness of the cumulative liquidated damages now being requested." *Id*. at ¶ 4(D) (emphasis added). Current contends that such actual damages would be less than $100/day, in part because the offending trucks were parked in a remote location, away from the public's view. Lastly, Current contends that the guaranty that he signed pertained only to the Conversion Agreement, and not to the Agency Contracts. In this regard, however, Current bases this argument on his misunderstanding that there was no Agency Contract prior to the 1996 Agency Contract, when in fact, as discussed above, there was also a July 1995 Agency Contract.

Triple C, Klee, and Baravalle submitted a joint response to plaintiff's summary judgment motion. Klee argues that he has no liability in connection with his personal guaranty, for several reasons. First, like Current, he contends that the personal guaranty pertains only to the Conversion Agreement, and that when he signed the guaranty, there was no agency agreement. However, like Current, Klee appears to base this argument on his mistaken belief that there was no agency agreement between Allied and Triple C until 1996, when in fact, as already indicated, there was an agency agreement in place from July 1, 1995 onward.[3] Klee further argues that the

---

[3] Klee's counsel acknowledged the existence of the earlier agency agreement during oral argument of the motion. At the time defendants' prepared their responses to the summary judgment motion, they did not recall the existence of the 1995 Agency Agreement. However, they do not now challenge the authenticity of the 1995 agreement, which was provided to them as part of plaintiff's reply.

guaranty is limited to "monetary obligations arising out of the agency relationship between Allied and Triple C and does not require [him] to be a surety for Triple C's performance in order to avoid the consequential or incidental damages caused by Triple C's alleged unlawful trademark infringing activity." Klee and Triple C further contend that the Agency Contract's liquidated damages provision is an unenforceable penalty. In this regard, Triple C and Klee argue that the liquidated damages amount "seems excessive given Triple C's status as a start up business in a limited market consisting of the mostly rural southern tier portion of New York. As such, from its onset, Triple C's ability to pierce and impact Allied's national market share was dubious at best given Triple C's limited financial resources and location." Triple C and Klee further suggest that the Agency Agreement was an adhesion contract, given that Triple C was a start-up company.

Counsel for Allied and counsel for Triple C, Klee, and Baravalle appeared before the undersigned for oral argument of the motions on April 28, 2005. Neither Current nor his counsel appeared. During oral argument, counsel agreed that the Court could enter a permanent injunction, requiring Triple C to paint over with black paint the name Allied, the slogan "The Careful Movers," and the "vanishing highway" symbol, appearing on Triple C's trailers. With regard to the summary judgment motions, counsel for Triple C, Klee, and Baravalle, argued that the liquidated damages provision was a penalty "on its face." In that regard, counsel stated that, while Triple C lacked the financial resources to hire an expert to provide proof regarding damages, it was "almost to the level of judicial notice" that $100 per day would be excessive, and therefore a penalty, given that Triple C was, at the time of the agreement, a start-up company in a rural

9

area. Plaintiff's counsel responded by arguing that the agency agreement was not an adhesion contract, and that while Triple C may have been a new venture, the parties involved, such as Current, were admittedly experienced in the moving business. Plaintiff's counsel noted, moreover, that Triple C had other options besides contracting with Allied, as shown by the fact that Triple C negotiated an agency agreement with Atlas soon after Allied terminated its agency agreement.

ANALYSIS

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See, Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "[T]he movant must make a prima facie showing that the standard for obtaining summary judgment has been satisfied." 11 MOORE'S FEDERAL PRACTICE, § 56.11[1][a] (Matthew Bender 3d ed.). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." *Gummo v. Village of Depew*, 75 F.3d 98, 107 (2d Cir. 1996)(*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)), *cert denied*, 517 U.S. 1190 (1996).

The burden then shifts to the non-moving party to demonstrate "specific facts

showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  To do this, the non-moving party must present evidence sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at 249; *see also*, FED. R. CIV. P. 56(e)("When a motion for summary judgment is made and supported as provided in this rule, and adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.").  Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993).  The parties may only carry their respective burdens by producing evidentiary proof in admissible form. FED. R. CIV. P. 56(e).  The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

At the outset, Baravalle is entitled to summary judgment, since plaintiff has not explained any basis for imposing liability against him individually.  Baravalle in merely a stockholder of Triple C, and did not sign a personal guaranty.  Accordingly, Baravalle is dismissed from the action.

As for Triple C, Klee, and Current, they contend that the liquidated damages clause in § 3.8 of the Agency Agreement is unenforceable, because it is actually a penalty.  The law in this regard is well settled:

> A liquidated damages clause generally will be upheld by a court, unless the liquidated amount is a penalty because it is plainly or grossly disproportionate to the probable loss anticipated when the contract was executed. Liquidated damages are not penalties if they bear a reasonable proportion to the probable loss and the amount of actual loss is incapable or difficult of precise estimation. The party challenging the liquidated damages provision bears the burden of proving that the provision constitutes a penalty.

*Wechsler v. Hunt Health Systems, Ltd.*, 330 F.Supp.2d 383, 413 (S.D.N.Y. 2004) (citations omitted).[4] The liquidated damages provision will be enforced unless the party opposing the clause can demonstrate that it was not "a reasonable estimate at the time the contract was negotiated and executed." *Crown It Services, Inc. v. Koval-Olsen*, 11 A.D.3d 263, 266, 782 N.Y.S.2d 708, 712 (1st Dept. 2004). Here, the Court will enforce the liquidated damages provision since, as discussed above, defendants have not come forward with any evidentiary proof in admissible form regarding damages. While defendants suggest that it is obvious that $100/day liquidated damages is unreasonable, the Court disagrees.

Klee and Current next argue that, for several reasons, the personal guarantees they signed should not be enforced. Both argue that the guarantees necessarily pertain only to the Conversion Agreement, and not to the Agency Contract, since the latter was not entered into until 1996. However, as discussed earlier, that argument is factually incorrect, as there was an Agency Contract in effect from July 1, 1995 onward. The Court further notes that the guaranty specifically refers to an agency agreement, not a conversion agreement. Klee also argues that, even if the guaranty pertains to the

---

[4] The parties agree that in interpreting the contract, the Court should apply the law of New York State.

Agency Contract, it does not obligate Klee to pay liquidated damages assessed against Triple C under § 3.8 of the contract. In this regard, he contends that the guaranty pertains only to "monetary obligations due" under the contract, not damages. However, the Court finds that the guaranty is broadly worded so as to obligate Klee and Current to pay any liquidated damages assessed under § 3.8 of the contract. *See*, Pl. Local Rule 56.1 Stmt., Ex. E-F "Guaranty of Payment" ("[T]he guarantor shall not be released of its obligation hereunder so long as any claim of Allied against Triple C Transportation Co., Inc. d/b/a Advance Moving & Storage arising out of the foregoing contract is not settled or discharged in full."). Finally, Current contends that he should be excused from performing under his personal guaranty, because of changed circumstances. Specifically, he contends that he should not be held liable for what Triple C did after his employment was terminated.[5] However,

> [t]he law is clear that where a guarantee is continuing, applicable to after-acquired obligations . . . it may not be said to have terminated by cessation of what one party may have regarded as a business relationship. Unless the parties to a continuing guarantee provide otherwise in writing, such a guarantee is not limited to the life of the loans executed in connection therewith and generally cannot expire by mere conduct, change of circumstances, or lapse of time.

*Merchants Bank of New York v. Kluger*, 221 A.D.2d 289, 289, 634 N.Y.S.2d 467, 468 (1st Dept.1995) (citations omitted). Here, the guaranty that Current signed was not conditioned upon his continued employment or association with Triple C. Rather, it was a continuing, unconditional guaranty. Accordingly, the Court finds, for all of the foregoing reasons, that the guarantees given by Klee and Current are enforceable.

---

[5] Although Current's employment with Triple C was terminated, he retained 50% ownership of the company.

CONCLUSION

Plaintiff's application for an injunction [#9] is granted, to the extent that Triple C is directed to paint over, with black paint, all references to Allied on its trucks and trailers, including the name Allied, the phrase "The Careful Movers," and the "vanishing highway" symbol. Plaintiff's motion for summary judgment [#27] and defendants' cross-motion for the same relief are both granted in part and denied in part, as follows: Defendant Baravalle's summary judgment motion is granted, and he is dismissed from this action; plaintiff's application is otherwise granted in its entirety against Triple C, Klee, and Current, as to liability; defendants' application is otherwise denied in its entirety. The Court will order a separate hearing on the issue of damages, in order to establish the total number of days that defendants were in violation.

So Ordered.

Dated: Rochester, New York
September 20, 2005

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge